[relates to Docket Item 15]

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| SHANE B. STREATER, | HON. JEROME B. SIMANDLE |
| Plaintiff, | Civil Action No. 05-2678 |
| v. |  |
| CITY OF CAMDEN FIRE DEPARTMENT, | **OPINION** |
| Defendant. |  |

APPEARANCES:

F. Michael Daily, Jr., Esq.
Sentry Office Plaza
216 Haddon Avenue
Suite 100
Westmont, NJ 08108
    Attorney for Plaintiff Shane B. Streater

Marc Riondino, Esq.
Office of City Attorney
13th Floor - City Hall
P.O. Box 95120
Camden, NJ 08101-5120
    Attorney for Defendant City of Camden Fire Department

**SIMANDLE**, District Judge:

    Plaintiff Shane B. Streater filed the instant action, alleging that over the course of his employment at the City of Camden Fire Department, he was discriminated against on account of his race in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq.  Presently before the Court is Defendant's motion for summary judgment [Docket Item 15].  For the following reasons, the Court will deny Defendant's motion.

I.    **BACKGROUND**

Plaintiff, who is African American, was hired by the City of Camden Fire Department (the "Fire Department") as a firefighter-recruit on February 3, 1997.  (Compl. ¶¶ 6, 8.) After he completed his training at the academy, Plaintiff was assigned to Tower Ladder Company Number Two (the "station"), where his supervisor was Captain Russell Watkins.  (Id. at ¶¶ 7, 9.)

Plaintiff alleges in his Complaint that "[s]hortly after [P]laintiff was assigned to that station[,] Captain Watkins, his supervisor, made 'jokes' that were derogatory to African-Americans."  (Id. at ¶ 10.)  According to Plaintiff, Captain Watkins, who is Caucasian, made these jokes "habitually," at times in the presence of other firefighters, and at times to Plaintiff when the two of them were alone.  (Id. at ¶¶ 7, 11; Pl.'s Opp'n Br. Ex. A 1.)  Among the derogatory comments Plaintiff alleges that Captain Watkins made on a regular basis were the Captain's statement that he knew "white guys who have machetes"; that "white boys with machetes ain't no joke"; and that "there's going to be a race war coming, and there's a militia in every state."  (Compl. at ¶ 12; Pl's Opp'n Br. Ex. B 79.)

2

According to Plaintiff, Captain Watkins was "hostile" and "violent" when he made some of these statements, and Plaintiff alleges that "[t]hese comments and others caused [him] to be fearful and distrustful of his supervisor." (Compl. ¶ 13.) Although Plaintiff concedes that he never filed a formal grievance report with the Fire Administration or his union regarding Captain Watkins' conduct, (Streater Statement of Undisputed Facts ("S.U.F.") ¶¶ 7-8), he claims to have brought Captain Watkins' behavior to the attention of Kenneth Chambers, the president of the firefighters' union,[1] and Captain Darryl Davis, but alleges that neither took any action in response to his concerns. (Pl's Opp'n Br. Ex. B 111-12.) With regard to Mr. Chambers in particular, Plaintiff testified during his deposition that Mr. Chambers "made a joke of the situation" and indicated that Plaintiff should "beat [Captain Watkins] down" in response to the Captain's derogatory remarks. (Id. at 111.)

On January 24, 2001, Plaintiff filed a complaint about Captain Watkins' conduct with the New Jersey Department of Law and Public Safety's Division of Civil Rights ("DCR"). (Pl's Opp'n Br. Ex. A 1.) In his complaint, Plaintiff alleged that he had been subjected to unlawful discrimination on account of his race, specifically citing Captain Watkins' "harass[ment]" and

---

[1] Mr. Chambers is alternatively referred to in the parties' submissions as the union shop steward and the union president. (Pl's Opp'n Br. Ex. B 111; Streater S.U.F. ¶ 7.)

"racial statements." (Id.) DCR conducted an investigation into Plaintiff's allegations, interviewing Plaintiff, Captain Watkins, Captain Davis, and thirteen of Captain Watkins' coworkers, and on October 4, 2002 it issued a finding of probable cause to credit the allegations in Plaintiff's complaint. (Id. at 1-2.) In the finding of probable cause, the DCR noted that while Captain Watkins denied having discriminated against Plaintiff on account of his race, many of the Fire Department employees interviewed over the course of the investigation revealed that Captain Watkins frequently made "racial jokes." (Id.) Specifically, Captain Davis "confirmed that Captain Watkins always made racial jokes[, but because] he knew that Captain Watkins was joking . . . he did not take offense at the jokes." (Id. at 1.) In addition, firefighters Joseph Tull, Sr., and Edwin Citron informed the DCR that Captain Watkins had made "racial jokes" and "racial comments" to them, and firefighter Richard Marnin confirmed that Captain Watkins "was a loud-mouth, always joking." (Id. at 2.) Firefighters King Whitfield, Dennis Deal, Kenneth Chambers, and Daniel Neiling reported that Captain Watkins "habitually joked," and Mr. Neiling stated that Plaintiff "had informed him that Captain Watkins was harassing him and he had made statements to him about machetes and a militia in New Jersey." (Id.)

4

In response to Plaintiff's DCR complaint, the City of Camden hired Phyllis Krichev Associates ("PKA") to investigate Plaintiff's allegations of harassment.  (Pl's Opp'n Br. Ex. C.) In its July 10, 2001 report regarding the investigation, PKA indicated that it interviewed numerous Fire Department employees but that none confirmed that Captain Watkins had harassed Plaintiff.  (Id.)

At approximately the same time that Plaintiff started complaining that he was being harassed by Captain Watkins, he was charged with multiple disciplinary violations and performance-related problems at the station.  On December 4, 2000, Plaintiff did not follow departmental procedures for reporting that he would not be on duty and was charged with being absent without leave ("AWOL").  (Def.'s Br. Ex. B 12-14.)  On December 16, 2000, Plaintiff was charged with being insubordinate to Captain Watkins as a result of an incident in which he refused to obey the Captain's order to clean up a mess he had left in the station's kitchen and shouted obscenities at the Captain.  (Def.'s Br. Ex. C 76-78.)  On April 2, 2001, Plaintiff was again charged with being AWOL for the morning shift and was also charged with being late for duty for the evening shift.  (Def.'s Br. Ex. B 5-9.)

Plaintiff's employment with the Fire Department was terminated on May 1, 2001 as a result of a departmental hearing that upheld the majority of charges that had been leveled against

5

Plaintiff.  (Id.)  Plaintiff appealed the issue of his termination to the New Jersey Department of Personnel ("DOP"), which referred the matter to the Office of Administrative Law. (Def.'s Br. Ex. N.)  Administrative Law Judge ("ALJ") Robert S. Miller conducted a hearing at which multiple witnesses testified, none of whom indicated that Plaintiff's disciplinary record was the product of racial discrimination.[2]  (Id. at 2.)  In a December 8, 2003 decision, ALJ Miller upheld the decision to terminate Plaintiff, rejecting Plaintiff's claim that his poor disciplinary record was the product of Captain Watkins' discrimination rather than Plaintiff's own misconduct.  (Id.) The DOP subsequently adopted ALJ Miller's findings of fact, but did not uphold the ALJ's recommendation to sustain Plaintiff's termination, and reduced Plaintiff's penalty to a 120-day suspension.  (Def.'s Br. Ex. P 3.)  The parties appealed the DOP decision to the Appellate Division of the Superior Court of New Jersey, which affirmed the DOP decision on June 24, 2005. (Def.'s Br. Ex. Q.)  Plaintiff returned to work at the Fire Department on October 6, 2004.  (Def.'s Br. Ex. R.)

---

[2]  Indeed, Captain Davis, who had "confirmed that Captain Watkins always made racial jokes[, but because] he knew that Captain Watkins was joking . . . he did not take offense at the jokes" in the DCR's finding of probable cause, (Pl.'s Opp'n Br. Ex A 1-2), testified before ALJ Miller that he had made no such statement to the DCR's investigator.  (Def.'s Br. Ex. O 157.)

Plaintiff filed his Complaint in this case on May 24, 2005 [Docket Item 1].  The dispute was referred to arbitration, and after the arbitrator filed an award on March 2, 2007, Plaintiff timely filed a request for trial de novo [Docket Item 12].  The motion for summary judgment presently before the Court followed, to which the Court now turns.

## II.  DISCUSSION

### A.    Standard of Review

Summary judgment is appropriate when the materials of record "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party."  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A fact is "material" only if it might affect the outcome of the suit under the applicable rule of law. Id.  In deciding whether there is a disputed issue of material fact, the court must view the evidence in favor of the non-moving party by extending any reasonable favorable inference to that party; in other words, "the nonmoving party's evidence 'is to be believed, and all justifiable inferences are to be drawn in [that party's] favor.'"  Hunt v. Cromartie, 526 U.S. 541, 552 (1999) (quoting Liberty Lobby, 477 U.S. at 255).

### B.    Hostile Work Environment Claim

7

In his Complaint, Plaintiff alleges (1) that Captain
Watkins' conduct "constituted discrimination against an
individual with respect to his compensation, terms, conditions,
or privileges of employment, because of such individual's race
and deprived plaintiff of his rights with respect to his
compensation, terms, conditions, and privileges of employment,
because of his race, in violation of [42 U.S.C. § 2000e-2]"; and
(2) that Plaintiff was retaliated against because he "complained
of a practice which [he] reasonably believed to have constituted
an unlawful practice of discrimination in violation of [42 U.S.C.
§ 2000e-3]."  (Compl. ¶¶, 24, 27.)  In his brief in opposition to
Defendant's motion for summary judgment, Plaintiff withdraws the
section 2000e-3 retaliation claim asserted in Count Two of the
Complaint,[3] conceding that the sole remaining basis for recovery
in this case is his claim that the "statements of a racial nature
made by . . . Captain Russell Watkins[] constituted racial
harassment, which altered the terms and conditions of [his]
employment in violation of Title VII."[4]  (Pl.'s Opp'n Br. 2-3.)

_____

   [3]  Thus, Count Two will be dismissed in the accompanying
Order.

   [4]  The Court disagrees with Defendant's argument that
"Plaintiff never pled or made a claim for hostile work
environment in his Complaint," which, they argue, focused
exclusively on discriminatory termination.  (Def.'s Reply Br. 4.)
The factual allegations in the Complaint and its citation of 42
U.S.C. § 2000e-2 as the statutory basis for recovery are plainly
sufficient to satisfy F. R. Civ. P. 8(a)(2)'s requirement that a
pleading set forth "a short and plain statement of the claim

Defendants argue that they are entitled to summary judgment on Plaintiff's remaining claim for a hostile work environment. (Def.'s Reply Br. 5.)

>    1.   <u>Hostile Work Environment Claims Generally</u>

Under 42 U.S.C. § 2000e-2(a)(1), it is "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race . . ."  The Supreme Court has explained that

> this language is not limited to 'economic' or 'tangible' discrimination.  The phrase 'terms, conditions, or privileges of employment' evinces a congressional intent to strike at the entire spectrum of disparate treatment of men and women in employment, which includes requiring people to work in a discriminatorily hostile or abusive environment.

<u>Harris v. Forklift Systems, Inc.</u>, 510 U.S. 17, 21 (1993) (some internal quotations and citations omitted).  In order to

---

showing that the pleader is entitled to relief," notwithstanding the fact that the Complaint does not use the precise phrase "hostile work environment."  The Complaint asserts that Plaintiff is entitled to recover under Title VII because (1) Captain Watkins repeatedly made racist jokes and threats to Plaintiff, (2) Plaintiff felt fearful as a result, and (3) Plaintiff complained about Captain Watkins' conduct to no avail.  These allegations unmistakably form the basis of a hostile work environment claim.  <u>See</u>, <u>e.g.</u>, <u>Aman v. Cort</u> <u>Furniture Rental</u> <u>Corp.</u>, 85 F.3d 1074, 1081 (3d Cir. 1996).  Indeed, the DRC finding of probable cause that preceded Plaintiff's institution of this action expressly found that "the nature of [Captain Watkins'] comments created a <u>racially hostile work environment</u> for Complainant . . ."  (Pl.'s Opp'n Br. Ex. A 2) (emphasis added).

establish a claim under Title VII for employment discrimination

based on a hostile work environment, a plaintiff must establish

> (1) that he or she suffered intentional discrimination because of race; (2) the discrimination was pervasive and regular; (3) the discrimination detrimentally affected the plaintiff; (4) the discrimination would detrimentally affect a reasonable person of the same race in that position; and (5) the existence of respondeat superior liability.

Aman v. Cort Furniture Rental Corp., 85 F.3d 1074, 1081 (3d Cir.

1996).

The pervasiveness and objective reasonableness requirements

in this standard are necessary to distinguish "simple teasing,

offhand comments, and isolated incidents (unless extremely

serious)," which are insufficient to establish a hostile work

environment claim, from "discriminatory changes in the terms and

conditions of employment," which are actionable under Title VII.

Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998)

(internal quotations and citations omitted).  In other words,

"[t]hese standards for judging hostility are sufficiently

demanding to ensure that Title VII does not become a general

civility code."  Id. (internal quotations and citations omitted).

Recognizing that there can be no "mathematically precise test" to

gauge the hostility of a workplace, the Supreme Court has

instructed courts to consider the totality of the circumstances

in each case, which include "the frequency of the discriminatory

conduct; its severity; whether it is physically threatening or

10

humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Harris, 510 U.S. at 23.


    2.  The Parties' Arguments

    Defendant argues that Plaintiff "cannot establish any of [the five] factors" set forth in Aman.  (Def.'s Reply Br. 5.) Plaintiff has failed to establish that he was discriminated against on account of his race or that such discrimination was pervasive, Defendant argues, because "[n]o one, other than plaintiff, ever heard Captain Watkins make the alleged remarks," even though in the Complaint Plaintiff alleges that other firefighters witnessed some of Captain Watkins' derogatory comments.  (Id.)  Defendant further argues that Plaintiff cannot show that "the discrimination detrimentally affected [him]," Aman, 85 F.3d at 1081, because the only detriment that he suffered was the disciplinary charges that were leveled against him, which ALJ Miller, the DOP, and the Appellate Division of the Superior Court upheld as being appropriately imposed as a result of Plaintiff's own misconduct.  (Def.'s Reply Br. 5-6.) Moreover, to the extent that Captain Watkins did make any racist jokes, Defendant argues, Plaintiff's coworkers, including other African American firemen, were not detrimentally affected by such

comments, which indicates the unreasonableness of Plaintiff's
reaction.  (Id. at 6.)  Finally, Defendant argues that Plaintiff
cannot satisfy the requirements of respondeat superior liability
in this case, both because Plaintiff "never filed a complaint
with the Fire Administration," and because once the City learned
of Plaintiff's DCR complaint, the City thoroughly investigated
the matter and reasonably determined that the harassment did not
occur; relying on Monell v. Dept. of Social Services, 436 U.S.
658 (1978), Defendant further claims that there can be no
municipal liability unless the alleged discrimination represents
"official policy."  (Def.'s Reply Br. 6-8.)

     Plaintiff argues that the existence of disputed issues of
material fact in this case require that the Court deny
Defendant's motion for summary judgment.  According to Plaintiff,
his own testimony and the DCR's finding of probable cause are
sufficient to establish that Captain Watkins subjected Plaintiff
to ongoing harassment and discrimination, causing Plaintiff to
feel threatened and intimidated.  (Pl.'s Opp'n Br. 10-11.)
Plaintiff argues that a reasonable person in his position would
have experienced a similar reaction to Captain Watkins'
derogatory remarks, especially in light of the fact that the
remarks were "uttered by a supervisor or superior officer . . .
[which] greatly magnifies the gravity of the comment[s]."  (Id.
at 11-12) (quoting Taylor v. Metzger, 152 N.J. 490, 503 (1998)).

Finally, Plaintiff argues that Defendant should be liable for Captain Watkins' unlawful conduct, because Plaintiff complained about Captain Watkins' conduct to supervisory officers, but no corrective action was taken.  (Pl.'s Opp'n Br. 12.)

### 3.  Analysis

Crediting Plaintiff's evidence and giving Plaintiff the benefit of "all justifiable inferences," Liberty Lobby, 477 U.S. at 255, the Court will deny Defendant's motion for summary judgment because there are triable issues of fact regarding Plaintiff's hostile work environment claim.[5]  First, with regard to the first two elements of Plaintiff's claim – the existence and pervasiveness of racial discrimination – there is sufficient evidence in the record for a jury to find that Captain Watkins regularly made jokes with derogatory racial themes and, perhaps more significantly, threatening comments with offensive racial content to Plaintiff.  Aman, 85 F.3d at 1081.  Plaintiff alleged in his Complaint and testified at his deposition that Captain

_____

[5]  As an initial matter, the Court rejects Defendant's argument that Plaintiff's suit must be dismissed because he sued the Fire Department rather than the City of Camden itself. (Def.'s Reply Br. 8.)  While fire departments "cannot be sued in conjunction with municipalities, because the [] department is merely an administrative arm of the local municipality," DeBellis v. Kulp, 166 F. Supp. 2d 255, 264 (E.D. Pa. 2001) (emphasis added), a suit against such an administrative arm is "construe[d] . . . as against the local government unit [itself]," Dillihay v. Atlantic County Government, No. 07-4370, 2008 WL 141113, at *4 n.1 (D.N.J. Jan. 9, 2008).

Watkins would make "'jokes' that were derogatory to African-Americans," (Compl. ¶ 10), that the Captain threatened Plaintiff by predicting an impending "race war," (id. at ¶ 12), or a "civil war over race," (Def.'s Br. Ex. E 81), and stating on "a number of occasions," (id. at 82), that he knew "white boys with machetes" and that "white boys with machetes ain't no joke."[6] (Id. at 78, 81-82.)  Plaintiff testified that Captain Watkins' derogatory comments were not limited to the Captain's repeated invocation of race wars and armed white men.  (Id. at 86-87.) While Title VII does not create "a general civility code," Faragher, 524 U.S. at 788 (citation omitted), the Court cannot conclude as a matter of law that a supervising officer's repeated, "hostile . . . [and] violent" invocation of race wars, (Def.'s Br. Ex. E 79), and use of racial jokes amount merely to "offensive utterance[s]."  Harris, 510 U.S. at 23.  Rather, should a jury credit Plaintiff's evidence, it could reasonably find that Plaintiff was the victim of regular and pervasive discrimination on account of his race.

---

[6]   The Court recognizes, of course, that the mere discussion of an issue like racial tension does not in any respect resemble the discriminatory conduct Title VII prohibits.  Crediting Plaintiff's evidence and drawing all inferences in his favor, however, Captain Watkins did not merely address the subject of racial tension in indelicate terms, but was "hostile . . . [and] violent" with Plaintiff, (Def.'s Br. Ex. E 79), and repeatedly made racially offensive jokes.  (Pl.'s Opp'n Br. Ex. A 1.)

Moreover, the contents of the DCR's finding of probable cause belie Defendant's assertion that Plaintiff's only evidence of Captain Watkins' offensive comments is his own testimony.[7] (Def.'s Reply Br. 5.)  Though he contradicted his statement to the DCR investigator when testifying before ALJ Miller, (Def.'s Br. Ex. O 157), Captain Davis confirmed to the DCR "that Captain Watkins always made racial jokes[, but because] he knew that Captain Watkins was joking . . . he did not take offense." (Pl.'s Opp'n Br. Ex A 1-2.)  Numerous firefighters interviewed by the DCR investigator echoed Captain Davis' statement regarding Captain Watkins' habitual use of racial jokes.  (Id. at 2.)  That some of the defendant's witnesses now deny having ever spoken with the DCR investigator, (Def.'s Br. Ex. O 157), and contradict Plaintiff's claims about Captain Watkins' references to race wars

_____

[7] Without the benefit of more thorough arguments from the parties, the Court declines to address at this stage whether certain hearsay-within-hearsay statements contained in the DCR document would be admissible at trial.  As a general matter, however, the Court notes that Federal Rule of Evidence 803(8)(C) removes from hearsay exclusion

> reports . . . of public offices or agencies, setting forth . . . in civil actions and proceedings . . . factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness.

Fed. R. Evid. 803(8)(C).  The DCR report falls within the Rule 803(8)(C) exception, see Coleman v. Home Depot, Inc., 306 F.3d 1333, 1341 (3d Cir. 2002), and for purposes of this motion, the Court only relies upon the statements of Fire Department employees in the DCR document that are unequivocally admissible.

and "white boys with machetes," (Def.'s Br. Ex. I 44), does not

establish the nonexistence of triable issues of fact in this

case; to the contrary, this evidence speaks directly to the

material factual dispute between the parties' competing accounts

of Plaintiff's experience in the Fire Department.

With regard to the third element of a hostile work

environment claim – that the discrimination detrimentally affect

the plaintiff – the Court likewise finds that triable issues of

fact preclude the entry of summary judgment in Defendant's favor.

Aman, 85 F.3d at 1081.  The Court disagrees with Defendant's

argument that the only detriments Plaintiff experienced were the

decisions to discipline and terminate Plaintiff, which were

ultimately upheld by the Appellate Division of the Superior

Court.  While Defendant is correct that the steps it took to

discipline Plaintiff were upheld by the DOL and the Appellate

Division,[8] as the Court explained, supra, the scope of Title VII

_____

[8]   Defendant argues that the decision of the Appellate
Division affirming the disciplinary measures that had been
imposed against Plaintiff precludes Plaintiff from arguing that
these measures were discriminatory in nature, (Def.'s Reply Br.
5-6); both Plaintiff, (Pl.'s Opp'n Br. 2), and the Court agree
that Plaintiff is estopped from pursuing the discriminatory
discipline issue in this action.  However, the Court rejects
Defendant's suggestion that the Appellate Division's affirmance
of the disciplinary decision precludes Plaintiff from litigating
the hostile work environment claim here.  See Peloro v. United
States, 488 F.3d 163, 174-75 (3d Cir. 2007) ("The prerequisites
for the application of issue preclusion are satisfied when: (1)
the issue sought to be precluded is the same as that involved in
the prior action; (2) that issue was actually litigated; (3) it
was determined by a final and valid judgment; and (4) the

"is not limited to 'economic' or 'tangible' discrimination" such
as discriminatorily imposed discipline.  Harris, 510 U.S. at 21.
The detriment Plaintiff claims to have suffered here was having
felt "fearful," (Pl.'s Opp'n Br. Ex. A 1), in the face of Captain
Watkins' "hostile . . . [and] violent" statements, (Def.'s Br.
Ex. E 79), and derogatory jokes.  Defendant has not presented any
evidence to undermine Plaintiff's claim that he felt intimidated
by Captain Watkins' conduct.

    Moreover, the Court does not agree with Defendants that as a
matter of law, the discrimination established by Plaintiff's
evidence would not "detrimentally affect a reasonable person of
the same race in that position." Aman, 85 F.3d at 1081.  The
discriminatory conduct to which Plaintiff testified and which is
further evidenced by the statements cited in the DCR's finding of
probable cause indicate that Captain Watkins did not simply blurt
out "a mere offensive utterance," Harris, 510 U.S. at 23, or
engage in "simple teasing," Faragher, 524 U.S. at 788 (citation

---

determination was essential to the prior judgment.") (internal
quotations omitted).  The question of whether Plaintiff was
subjected to "pervasive and regular" discrimination at the heart
of this action, Aman, 85 F.3d at 1081, was neither "the same as
that involved in the prior action," nor "essential to the prior
judgment," Peloro, 488 F.3d at 174-75.  The Appellate Division
did not address the matter of discrimination at all, and while
ALJ Miller did not credit Plaintiff's claim that he was
disciplined for discriminatory reasons, he mentioned
discrimination only fleetingly, and did not address the question
of pervasive discrimination affecting the conditions of
Plaintiff's employment at all.  (Def.'s Br. Ex. N 2; Def.'s Br.
Ex. P.)

omitted), but shows instead that Captain Watkins made racially offensive jokes and remarks "frequen[tly]." <u>Harris</u>, 510 U.S. at 23. These remarks, including the invocation of a race war and "white boys with machetes" in "hostile" terms (Def.'s Br. Ex. E 78, 79, 81), would reasonably be perceived as "sever[e]" and threatening by an African American in Plaintiff's position. <u>Harris</u>, 510 U.S. at 23. As Plaintiff recognizes, this is particularly true in light of the fact that the source of the derogatory comments was not simply a coworker, but was instead Plaintiff's superior officer. <u>See</u> <u>Taylor</u>, 152, N.J. at 503. The fact that other African Americans in the Fire Department, such as Captain Davis, heard Captain Watkins' "racial jokes" and were not offended by them, (Pl's Opp'n Br. Ex. A 1), could certainly be presented to a jury in order to undermine Plaintiff's argument that his response to the discrimination was unreasonable, but does not make Plaintiff's response unreasonable as a matter of law. The Court cannot say with certainty that a reasonable jury could not find in Plaintiff's favor that this conduct crossed the line from offensive utterances to racially hostile remarks that were regular and pervasive. The facts offered by Plaintiff seem weak and largely uncorroborated by the experiences of others working in the same environment, but the Court's capacity to weigh evidence at the summary judgment stage is almost nil, so long as the disputed facts are material.

Finally, the Court finds that the final element of a hostile work environment claim – "the existence of respondeat superior liability" – is satisfied in this case.  <u>Aman</u>, 85 F.3d at 1081. As the Court of Appeals for the Third Circuit has recognized,

> under Title VII, much turns on whether the harassers are supervisors or coworkers.  If supervisors create the hostile environment, the employer is strictly liable, though an affirmative defense may be available where there is no tangible employment action.  When coworkers are the perpetrators, the plaintiff must prove employer liability using traditional agency principles.

<u>Andreoli v. Gates</u>, 482 F.3d 641 (3d Cir. 2007) (internal quotations and citations omitted).  In other words, where, as here, the plaintiff's supervisor was the source of the discriminatory harassment, the burden of proof on the element of vicarious liability shifts from the plaintiff to the defendant. A defendant can prove the affirmative defense referenced in <u>Andreoli</u> by establishing by a preponderance of the evidence

> (a) that the employer exercised reasonable care to prevent and correct promptly any . . . harassing behavior, <u>and</u> (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise.

<u>Faragher</u>, 524 U.S. at 807 (emphasis added); <u>see also</u> <u>Burlington Industries, Inc. v. Ellerth</u>, 524 U.S. 742, 765 (1998); <u>Andreoli</u>, 482 F.3d at 640.[9]

---

[9]  Defendant incorrectly derives a standard for "when a municipal defendant can [] be held responsible for the actions of its employees under a respondeat superior theory" from <u>Monell v. Dept. of Social Services</u>, 436 U.S. 658 (1978).  (Def.'s Reply Br.

19

Genuine issues of material fact in this case exist with regard to each of these prongs.  First, as to whether Defendant "exercised reasonable care to prevent and correct" Captain Watkins' offensive conduct, <u>Faragher</u>, 524 U.S. at 807, there are factual questions as to when Defendant learned of the conduct and whether it responded with reasonable dispatch.  <u>See</u> <u>Andreoli</u>, 482 F.3d at 644 (noting that where the reasonableness of employer's response is not adequate "as a matter of law," the issue of "whether the employer's remedial action was prompt and adequate" is a jury question).  While Defendant has placed great emphasis on the fact that the PKA investigation was launched within a month after Plaintiff filed his complaint with the DCR, Plaintiff's evidence suggests that Captain Watkins' use of racial jokes was well-known in the Fire Department, including among superior officers like Captain Davis, prior to Plaintiff's filing of his DCR complaint.  (Pl.'s Opp'n Br. Ex. A 1-2.)  If, as Plaintiff's evidence suggests, Defendant knew or should have known of Captain Watkins' racial jokes well before Plaintiff

_____

6.)  "<u>Monell</u> identifies when a municipality may be held liable under 42 U.S.C. § 1983; it has no bearing on" Plaintiff's claim, which is brought pursuant to Title VII.  <u>Richardson v. Byrd</u>, 709 F.2d 1016, 1022 (5th Cir. 1983); <u>see also</u> <u>Canada v. Boyd Group, Inc.</u>, 809 F. Supp. 771, 779 n.3 (D. Nev. 1992) ("In <u>Monell</u> the [C]ourt considered city and individual liability under 42 U.S.C. § 1983, not Title VII. The holding of that case does not directly bear on this decision."). Plaintiff's employer – the Camden City Fire Department – is the sole proper Defendant under Title VII.

filed his DCR complaint, then a jury certainly could find that
Defendant failed to exercise "reasonable care to prevent and
correct promptly" the offending conduct.  Faragher, 524 U.S. at
807.  Moreover, even if Defendant learned of the conduct in
question only when Plaintiff filed his DCR complaint, whether it
was reasonable for Defendant to launch an investigation into an
allegedly "racially hostile work environment," (Pl.'s Opp'n Br.
Ex. A 2), one month after the complaint was filed is a jury
question.  See Andreoli, 482 F.3d at 644.  Nor is the fact that
Defendant has a "grievance procedure . . . dispositive" of
Plaintiff's hostile work environment claim as a matter of law.
Faragher, 524 U.S. at 792.

       The Court's finding that genuine issues of material fact
exist as to whether the City exercised reasonable care to prevent
Captain Watkins' offensive conduct is sufficient in itself to
show that Defendant cannot on this motion satisfy its burden as
to the affirmative defense of respondeat superior liability.  See
Faragher, 524 U.S. at 807 (an employer must show both that it
exercised reasonable care to prevent and correct the harassing
behavior and that the employee unreasonably failed to take
advantage of corrective opportunities).  However, the Court also
notes that it cannot conclude as a matter of law that Plaintiff
"unreasonably failed to take advantage of any preventive or
corrective opportunities provided by the employer or to avoid

harm otherwise." Id.  While Plaintiff did not avail himself of the Fire Department grievance procedure, he complained about Captain Watkins' conduct to Captain Davis, a superior officer in the Department, who took no action to address Plaintiff's concerns about being harassed.  (Pl's Opp'n Br. Ex. B 111-12.) The Court finds that Plaintiff's effort to convince a superior officer to address his concerns about Captain Watkins' harassing conduct raises a question of fact exist as to whether Plaintiff unreasonably failed to avail himself of the Fire Department's corrective opportunities.

## III. CONCLUSION

For the reasons discussed above, the Court will deny Defendant's motion for summary judgment on Count One and shall dismiss Count Two as having been withdrawn.  The accompanying Order will be entered.


**March 17, 2008**                           **s/ Jerome B. Simandle**
Date                                      JEROME B. SIMANDLE
                                          United States District Judge